# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DAVID E. WOOLDRIGE,**

                **Plaintiff,**

  **-vs-**                                                                   **Case No. 6:07-cv-1328-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff David E. Wooldridge ("Wooldridge") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

Wooldridge was born on May 29, 1956, and alleges an onset of disability as of August 30, 2003. R. 33. Wooldridge served in the Unites States Marine Corp from June 1, 1973 until March 21, 1975, when he was honorably discharged after suffering a server laceration to his hand as a result of a knife wound and a compression fracture of L5 vertebrae he sustained after in a motorcycle accident that occurred while he was on leave. R. 37, 152, 155. The tendons and nerves of Wooldridge's hand were surgically repaired in 1974 at Walter Reed Army Hospital. R. 152. Thereafter, he was treated conservatively with postoperative splinting, physical therapy, and medication. R. 152. The compression fracture was also treated conservatively, including

bed rest, traction, and medication. R. 155. Wooldridge has not been hospitalized or undergone any surgical treatment for either his hand or his back since 1974. R. 529. As of January 14, 2004, Wooldridge has a sixty percent (60%) combined disability rating from the Department of Veterans Affairs for the injury to his hand, back, and depression. R. 38-39.

Wooldridge's previous employment includes working as a counter service person at an equipment rental business, working in a warehouse, a dishwasher, and working as a packer at a warehouse. R. 54, 512. The longest job Wooldridge performed was as a counter service person at an equipment rental business from May 21, 1999 through May 6, 2003. R. 54. Wooldridge was last employed as a dishwasher from July of 2003 through September of 2003. R. 54.

Wooldridge has a history of alcohol and drug abuse, including alcohol use after the alleged onset date of disability. R. 209, 244, 279, 332, 344, 348-49, 359, 361. Wooldridge has been arrested several times for assault and battery. R. 525-26. It also appears that Wooldridge has several misdemeanor convictions for petit larceny, and a felony conviction for grand larceny. R. 361, 525-26. Wooldridge has spent a total of three years in jail, but denies any prison time. R. 526. At the administrative hearing held on April 20, 2006, Wooldridge testified that he had been off probation for three years. R. 527.

A review of the objective medical record reveals that Wooldridge suffers from degenerative disc disease, depression, chronic obstructive pulmonary disease, and mild distal esophagitis. R. 155-495. Since November of 2003, Wooldridge has undergone physical therapy for his back, other conservative treatments, and has taken numerous medications including methadone, lithium, and oxycodone. R. 487-88. A more detailed review of the medical record is not necessary to resolve the issues on appeal. R. 155-495.

Wooldridge filed an application for disability benefits on December 12, 2003, alleging an onset date of August 20, 2003. R. 33-36. On March 13, 2004, Wooldridge's claim was initially denied, and on September 30, 2004, Wooldridge's claim was denied upon reconsideration. R. 24-29. On October 11, 2004, Wooldridge requested a hearing before an Administrative Law Judge. R. 30.

On April 20, 2006, the Honorable Melvin Benitz, Administrative Law Judge (the "ALJ") held a hearing on Wooldridge's disability claim. R. 507-35. Attorney Maria Santana represented Wooldridge at the hearing. R. 507. Wooldridge and Vocational Expert Mark Capps (the "VE") testified at the hearing. R. 507-35. At the hearing, Wooldridge testified to the following:

- He was forty-nine years old at the time of the hearing;

- His back problems are the most severe, he has chronic pain nearly all the time in his back. He cannot stand in one place, he cannot sit in one place, he cannot bend over, lift anything over ten pounds and he cannot walk long distances. Wooldridge described the pain as a "toothache in my lower back";

- He has degenerative disc disease and chronic arthritis;

- His back pain is a nine on a scale of one to ten;

- His doctor's restricted him to lifting no more than ten pounds;

- He has not worked since August 30, 2003;

- He has bipolar disorder and major depression dating back to his 1974 hand injury;

- He has chronic obstructive pulmonary disease;

- He quit drinking over two and a half years ago;

- He has been to rehab for alcohol abuse four or five times;

- Wooldridge's counsel stated that Dr. Jennifer Coady completed a residual functional capacity ("RFC") for him;

- Dr. Coady treats Wooldridge for his back pain and depression;

R. 507-29. The ALJ's examination of VE was as follows:

> Q. I'd like you to assume a person who is 47 years of age on his onset date, which he puts at 8/30/03; tenth grade education; past relevant work as indicated; a right handed individual; separated from degenerative disease at the L5 level; he also has some depression with a bipolar component; and some PLTD. These things do cause him to have moderate pain and discomfort, severe on occasion and some depression and shortness of breath on over exertion. And the file indicates he has five-five strength in the extremities. And somewhat relieved by his medications, however he indicates he derives some lack of sleep at night from one or a combination of his medications and the side effects.
> . . .
> Q. And if I find that he can lift 10 pounds frequently, 20 pounds on occasion; sit for 30 minutes - - 20 to 30 minutes; stand for 20 to 30 minutes; and would need a sit/stand option along that basis; and a job that have simple, routine, unskilled jobs due to his pain and depression, low strength in nature, concentration and memory, a job that had little interaction with the public or supervisors, co-workers, and avoid excessive, climbing, balancing and stooping, heights and hazardous machinery, temperature and humidity extremes, and would [be] bodily limited to pushing and pulling with that right upper extremity due to his hand injury. Would the claimant be able to do light work activity with these limitations? Are there jobs, Mr. Capps, that the person could do with those limitations in your opinion?
> . . .
> A. Yes, within that hypothetical and reviewed from the DOT, the first job would be that of a warehouse checker. . . . [A warehouse checker] is an individual who works through incoming and outgoing small items, redistributing or further processing for packing or shipping. . . . The second job title is shipper, and this is where you're putting - -

4

> identifying the information on the products which are ready to ship, bags or labels on shirts, something onto the product. . . . The next position would be an assembler of small products.

R. 530-32. Ms. Santana was then asked by the ALJ whether she had any questions for the VE and the following exchange occurred:

> ATTY.  Yes, Your Honor.
> ALJ.   Go ahead.
> ATTY.  Yes, Your Honor. We have a residual functional capacity prepared from his doctor, from the VA, just from the hypothetical.
> ALJ.   What exhibit are you reading from?
> ATTY.  This is it but you have it, sorry, Your Honor, <u>we didn't put in the exhibit number</u>.
> ALJ.   What's the date on it?
> ATTY.  It's dated - - <u>I think I gave you a copy of it</u> - - the new one.
> ALJ.   Okay, go ahead.
> ATTY.  Okay.

R. 533 (emphasis added). Based on the testimony at the hearing and the parties' briefs, it appears that the RFC at issue was prepared by Dr. Coady. R. 515, Doc. Nos. 15 at 9, 16 at 12-13. However, there is no RFC in the record on appeal from Dr. Coady, the ALJ did not discuss an RFC in his decision, Wooldridge did not attach an RFC to his brief, and the record, including the parties' briefs, does not contain a date for the RFC.

At the hearing, immediately following the above exchange between the ALJ and Wooldridge's counsel, the following exchange occurred between counsel and the VE:

> Q.  This is from the doctor, this patient is capable of doing low stress jobs; he would be able to sit less than two hours in an eight hour day, stand or walk less than two hours in a work day; This person would have to take - - need to take unscheduled shifting of positions at will, that's sitting, standing or walking, this person would need to take unscheduled breaks through an eight hour workday and this

5

>     is approximately every hour for 20 minutes. This person
>     could occasionally lift and carry less than 10 pounds; at the
>     most, 10 pounds; could only occasionally look down, can
>     rarely twist, never stoop, crouch, climb stairs and only
>     occasionally climb stairs. He would - - in an estimate, he
>     would be missing work due to his impairment, physical
>     more than four days per month and this would be my
>     hypothetical. Would this claimant be able to perform any
>     of his past work or any of the jobs that you mentioned?
> A.  No, ma'am.

R. 533-34.

On May 22, 2006, the ALJ issued a decision denying Wooldridge's application for disability finding the following:

1. Wooldridge meets the insured status requirements of the Social Security Act through December 31, 2008;

2. Wooldridge has not engaged in substantial gainful activity at any time relevant to this decision;

3. Wooldridge has the following severe impairments: degenerative disc disease, depression, and chronic obstructive pulmonary disease;

4. Wooldridge does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that Wooldridge has the RFC to [perform] a significant range of light work. He is limited to simple, routine, unskilled, low stress work that has a sit-stand option every thirty minutes and requires only low concentration and memory, does not require substantial contact with the general public, and that allows him to avoid prolonged balancing, climbing, and stooping. He must avoid temperature and humidity extremes and is occasionally limited in his grip and pushing and pulling with his right upper extremity;

6. Wooldridge is unable to perform any past relevant work;

7. Wooldridge was born on May 29, 1956, and was 47 years old on the alleged disability onset date, which is defined as a younger individual 45-49;

8. Wooldridge has a limited education and is able to communicate in English;

6

9. Transferability of job skills is not material to the determination of disability due to the claimant's age;

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform;

11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 30, 2003 through the date of this decision.

R. 10-19. In determining that Wooldridge had the RFC to perform light work, the ALJ considered the records, opinions, and RFC evaluations of the following treating, examining, and non-examining physicians: Dr. Lower; Dr. Patel; Dr. Costello; Dr. Kitzay; Dr. Zelenka; and Dr. Jung. R. 15-17. The ALJ weighed the medical record and medical opinions against Wooldridge's testimony and allegations regarding his limitations. R. 14-17. The ALJ determined that Wooldridge's testimony and allegations regarding the intensity, duration and limiting effects of his symptoms were "not entirely credible." R. 15. In making that determination, the ALJ stated the following:

> Dr. Lower reported on November 12, 2003 that the claimant had normal heel and toe gait mechanisms and did not require the use of an orthopedic assistive device. He had 5/5 motor function and no gross dermatomal sensory loss. Straight leg raising was negative. Dr. Patel reported on February 16, 2004 that the claimant had a full range of motion of his upper extremities with 5/5 grip strength on the left and 4/5 on the right. Straight leg raising was negative in sitting and lying down and his gait was normal. He did not have any reproducible fatigue on repetitive muscle testing. Carol J. Costello, M.D., reported on February 17, 2006 that claimant's depression was reasonably controlled with anti-depressants and that his anxiety was controlled with benzodiazepine. These findings are indicative that the claimant's complaints are not fully substantiated by the objective medical conclusions and his symptoms may not have been as limiting as the claimant has alleged in connection with this application.
> . . .
> The record fails to show that the claimant had been hospitalized for

7

> his impairment or show that the claimant had received significant active care other than for conservative routine maintenance. The claimant's primary problem is his degenerative disc disease from an old accident but he has not required surgical intervention. Although the claimant has been diagnosed with depression, the claimant continues to abuse alcohol and it is uncertain whether this abuse contributes to his mental impairment. There have been no significant increase or changes in prescribed medication reflective of an uncontrolled condition, nor did the claimant describe side affects from his medication that would prevent him from substantial gainful activity. Furthermore, no treating or examining source stated that the claimant's impairments were totally debilitating or rendered the claimant completely unemployable.
>
> . . .
>
> The claimant has admitted certain abilities which provide support for part of the residual functional capacity conclusion in this decision. As noted above, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The overall evidence suggests that the claimant has the ability to care for himself and maintain his home.
>
> . . .
>
> The record reveals that the claimant failed to follow-up on recommendations made by his treating physicians. The record indicates that the claimant was constantly advised by his doctors to quit smoking but that he continued to do so. Progress notes reported on March 9, 2006 [show] that claimant continued to use tobacco. This suggests that the claimant's symptoms may not have been as serious as has been alleged in connection with this application and appeal.

R. 15. Furthermore, the ALJ gave significant weight to each medical opinion, RFC, and Mental RFC in the record stating they were all well supported by the objective medical evidence of record. R. 17.

Wooldridge requested review by the Appeals Council of the ALJ's decision denying him disability benefits, and on June 20, 2007, after receiving and making part of the record counsel's memorandum of errors, the Appeals Council denied review. R. 4-6, 497-506. On August 23, 2007, Wooldridge timely appealed the Appeals Council's decision to the United States District

Court. Doc. No. 1. On April 27, 2008, Wooldridge filed a memorandum of law in support of his appeal. Doc. No. 15. On June 24, 2008, the Commissioner filed a memorandum in support of his decision that Wooldridge is not disabled. Doc. No. 16. The appeal is ripe for determination.

## II.  THE PARTIES' POSITIONS

Wooldridge assigns three errors to the Commissioner's decision: (1) the Commissioner erred in determining that Wooldridge had the RFC to perform light work because the ALJ did not consider the RFC from Dr. Coady; (2) the ALJ erred because the hypothetical question posed to the VE did not accurately reflect Wooldridge's limitations as set forth in Dr. Coady's RFC; and (3) the ALJ erred in determining that Wooldridge's testimony and allegations concerning his subjective limitations were not entirely credible. Doc. No. 15.

The Commissioner argues that substantial evidence supports his decision to deny Wooldridge his claim for disability benefits. He maintains that: (1) Wooldridge had the burden to introduce evidence in support of his claim and, because the record fails to contain an RFC from Dr. Coady or <u>any</u> evidence that Wooldridge actually introduced an RFC from Dr. Coady into the record, the ALJ did not err by failing to consider it; (2) the ALJ is not required to accept a VE's answer to any hypothetical if the record evidence does not support the limitations set forth in the hypothetical; and (3) substantial evidence exists to support the ALJ's determination that Wooldridge's testimony and allegations were not entirely credible. Doc. No. 16.

## III. LEGAL STANDARDS

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other

evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments

meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is

not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## IV. ANALYSIS OF ALLEGED ERRORS

### A. Whether the ALJ Erred In Not Weighing or Considering the Alleged RFC From Dr. Coady.

It is undisputed that there is no RFC in the record from Dr. Coady. Doc. No. 15 at 9 ("Actually, one of the most significant problems with this case is that [the RFC from Dr. Coady] is not in the [record]."). Wooldridge asserts that "[i]t is clear from reading the hearing testimony, that the ALJ, in fact, did have a copy of the functional capacity form prepared by [Dr. Coady]." Doc. No. 15 at 9. The Court finds that statement is not accurate. At the hearing, as detailed above, it is clear that Wooldridge's counsel did not mark an RFC from Dr. Coady as an exhibit. R. 533. Similarly, at no time during the hearing did Wooldridge's counsel move an RFC from Dr. Coady into evidence. R. 507-535. The only indication that the ALJ might have seen such an RFC is counsel's statement that "I think I gave you a copy of it." R. 533. At no time did the

ALJ acknowledge having received any RFC from Dr. Coady. In fact, even in Wooldridge's brief on appeal, the only indication that an RFC from Dr. Coady exists is from the statement of counsel. R. 515 ("Dr. Jennifer Colineashy [phonetic] completed a residual, functional capacity for you."). In Wooldridge's brief, he cites to counsel's statements regarding Dr. Coady's evaluation as evidence that such an RFC actually exists. Doc. No. 15 at 9. The Commissioner, in his brief, states that he requested a copy of the RFC at issue from Wooldridge's appellate counsel, but no response was forthcoming. Doc. No. 16 at 13 n. 3.

The regulations governing claims for disability benefits, specifically 20 C.F.R. § 404.1516, states:

> If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case.

*Id.* An ALJ is required to determine a claimant's RFC prior to proceeding to step four of the sequential analysis detailed above. 20 C.F.R. §§ 404.1520(2), 416.920(e). At this stage in the process, the claimant has the burden of proving the existence of a disability. *See Carnes*, 936 F.2d at 1218. Therefore, it was Wooldridge's responsibility to insure that any evidence supporting his disability claim was introduced into the record. However, the record does not show that Wooldridge introduced the RFC at issue into the record or produced it to the ALJ. Thus, this Court cannot find the ALJ erred by failing to consider an RFC that was never made part of the record.

  **B.**   **Whether the ALJ Erred By Failing to Include the Limitations Set Forth in Dr. Coady's RFC When Posing a Hypothetical Question to the VE.**

As set forth above, this Court cannot find that the ALJ erred by failing to consider an

alleged RFC that has never been produced or otherwise made part of the record. By the same token, this Court cannot find that the ALJ erred by failing to include the limitations contained within the RFC when he posed a hypothetical question to the VE. Furthermore, to the extent Wooldridge argues that the ALJ should have considered or weighed the VE's answer to counsel's hypothetical question, based on the missing RFC, the conclusory statements of counsel are not evidence and, therefore, the ALJ was not required to consider them. *See Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000) (". . . the opinions, allegations, and conclusory statements of counsel do not substitute for evidence.") (citing *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir. 1998)).

    **C.**    **Whether the ALJ Erred in Finding Wooldridge's Testimony Not Entirely Credible.**

Wooldridge argues that the record contains substantial evidence that his testimony regarding his impairments is credible. Doc. No. 15 at 14. However, as stated, that is not the proper standard on appellate review. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). If

proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The fact that a record contains substantial evidence which might lead to a contrary outcome is not grounds for reversal if the record contains substantial evidence to support the ALJ's determination. *Weiler v. Apfel*, 179 F.3d 1107, 1109 (8th Cir. 1999).

After reviewing the objective medical record and the ALJ's credibility finding as set forth above, the Court finds that the ALJ stated specific and adequate reasons to support his credibility finding regarding the severity and persistence of Wooldridge's symptoms and substantial evidence supports his finding. Thus, the ALJ's credibility determination is affirmed. *See Bowman,* 831 F.2d at 1012; *Bowen*, 786 F.2d at 1054.

## V.    CONCLUSION

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter a separate judgment in favor of the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on March 10, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Shea A. Fugate
Law Office of Shea Fugate
1800 Pembrook Dr., Suite 300
P.O. Box 940989
Maitland, Florida      32794

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida       33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia       30303-8920

The Honorable Melvin Benitz
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
2d Floor
500 W. Lockerman St
Dover, DE     19904